DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

DURING THE YEAR 1910.

Minnie Hamilton, Appellee, v. Kankakee Electric Railway Company, Appellant.

## Gen. No. 5181.

1. NEGLIGENCE—*what constitutes, in giving signal to start car.* *Held,* under the evidence, that it might have been negligence for the conductor to give a signal to start an over-crowded car without first ascertaining whether any one was in the act of alighting, even though he thought the car had stood still sufficient time for any one to alight.

2. INSTRUCTIONS—*when upon right of recovery proper.* *Held,* that an instruction was proper which told the jury that "while the burden of proof is upon the plaintiff herein, still if the jury find that the evidence bearing upon plaintiff's case preponderates in her favor although but slightly, it will be sufficient for the jury to find the issues in her favor."

3. INSTRUCTIONS—*ignoring issues.* *Held,* that an instruction as follows was bad because it ignored the question whether the conductor knew, or in the exercise of reasonable care ought to have known, that the plaintiff was in the act of alighting from the car.

"The court instructs the jury that if they find from the evidence that the car upon which the plaintiff had been a passenger stopped at its usual place of stopping for a reasonable length of time to allow the plaintiff to alight, and if the jury find from the evidence that the same was a safe place for the plaintiff to have left the car, and if the jury find from the evidence that she did not alight while the car was standing, but did alight immediately after the car had started and while it was in motion, and without the consent of the defendant, and if the jury further find from the evidence

SECOND DISTRICT—NOVEMBER, 1910.     423

Hamilton v. Kankakee Elec. Ry. Co., 158 Ill. App. 422.

that said act of the plaintiff was the proximate cause of her injury, then the defendant is not liable for any damage she sustained by reason thereof."

4. VERDICTS—*when set aside on review*. *Held*, in this case, that the evidence was insufficient and the verdict excessive, and for that reason a reversal is ordered.

Action in case for personal injuries. Appeal from the Circuit Court of Kankakee county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1909. Reversed and remanded. Opinion on rehearing filed November 18, 1910.

SMALL & BROCK, for appellant.

COOPER & HOBBIE, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

Appellant operates an electric car line in the city of Kankakee.  One of its tracks is laid along Greenwood avenue, which street runs north and south, and its north end is at the gate of Mound Grove Cemetery, where the track curves and runs west along Fair street to the Kankakee District Fair Grounds.  Appellee was a passenger on a car of appellant going north on this line on September 27, 1907, and while she was alighting from the car she fell or was thrown by the motion of the car, and was injured.  She brought this suit in the Circuit Court of Kankakee county to recover damages for the injuries thereby sustained. The declaration contained four counts.  The first and second counts charged negligence in suddenly starting the car while appellee was alighting therefrom. The third count charged that appellant so carelessly and negligently operated its car that appellee was thrown to the ground with great force.  The fourth count charged negligence in the employment of a conductor and a motorman who were incompetent and inexperienced, and that, by reason of their incompetency and inexperience in handling said car, it was suddenly started while appellee was about to

424     APPELLATE COURTS OF ILLINOIS.

Hamilton v. Kankakee Elec. Ry. Co., 158 Ill. App. 422.

alight therefrom, throwing her to the ground and injuring her. Each count alleged that appellee was in the exercise of due care for her own safety when injured. A plea of not guilty was interposed, and on a trial appellee obtained a verdict for $3,000. A motion for a new trial was denied, judgment was entered on the verdict, and the company prosecutes this appeal.

Appellee was riding in a closed car that hauled a trailer. There was a conductor on each car and, owing to the number of people going to the fair, which was then in progress, both cars were crowded. Appellee testified that she wished to get off at the cemetery, and that, when within about 200 feet of the cemetery gate, she pushed the button which gave the signal to stop; that the entire train had passed around the curve and west of the line of Greenwood avenue and that the rear of the front car was near the front entrance of the Friederich's Marble Works, when it stopped; that the aisle was so crowded that it was with difficulty that she made her way to the rear platform; that she had a bouquet of flowers and a pocket-book in her right hand, and, on account of the crowded condition of the vestibule, could not take hold of either railing as she went down the steps; that while her right foot was still on the step and she was stepping to the ground with her left, the signal was given to start and the car started and she fell forward. Her foot turned under her, and she struck the ground on her hand and hip. The car passed on without stopping. She got up, went over to the marble works, and sat on a monument; and a car which had been waiting at a switch just west, came on and she was taken aboard. Appellee introduced the following further proof upon the question of appellant's liability. Mrs. Buck testified that she occupied a seat facing the one in which appellee was sitting; that she thought the car was right opposite Friederich's Marble Works when it stopped; that she saw appellee on the

ground when the car had moved about six feet. Blanche Dusenbury testified that she knew they were at the cemetery and in Greenwood avenue when they stopped; that the car had turned a little on the curve. She said she remembered the location because she wondered at their stopping at the cemetery entrance, as they generally went around the curve during the fair. Thomas Clark testified that he "remembered that the car stopped near the cemetery gate;" that he saw appellee hit the ground after the car started; and that the car had moved thirty or forty feet or more before appellee fell. Anna Gillis testified that she recollected that the car stopped at or near the cemetery gate, and then she said that it passed Friederich's Marble Shop when it stopped. Appellant introduced the following proof. Its motorman testified that he stopped the rear of the front car at the sidewalk on the west side of Greenwood avenue; that the front end of the motor car was about twenty feet west from the west line of Greenwood avenue; that he stopped a minute or more, and then started the car slowly. The conductor of the motor or front car testified that he remembered stopping in the vicinity of the cemetery; that when they stopped the motor car had just got into the curve, and was about in the middle of the curve; that the front of the car was about twenty-five feet from the end of the sidewalk; that he was three-quarters of the way up in the car, and that he turned and looked out through the rear door, but saw no one get off; that there were seven or eight people standing in the aisle, but that there was plenty of room on the rear platform. The conductor of the trailer testified that they stopped at the cemetery gate; that the motor car had barely gone into the curve when they stopped; that three ladies got off his car and went into the cemetery; that they had passed through the cemetery gate which was thirty or thirty-five feet away before the car started.

426    APPELLATE COURTS OF ILLINOIS.

Hamilton v. Kankakee Elec. Ry. Co., 158 Ill. App. 422.

The foreman of Friederich's Marble Works testified that he had an unobstructed view of the car when it stopped; that it stopped on the curve at the usual place for persons to get off to go to the cemetery; that his attention was attracted by the unusual length of time that it stopped; that when he first saw appellee she was standing on the bottom step, and the car had moved twenty or twenty-five feet from where it stopped; but he pointed out as the place where the car stopped a position which measurements showed to be seventy-nine feet from where she fell, and thirty-seven feet from the cemetery gate. Viola Hasker testified that she sat in the trailer about two seats from the front, and that the cars stopped at such a place that she, sitting in the trailer, could look right, into the cemetery gate. If her testimony is true, it shows, when considered in connection with the plat in evidence, that the rear of the front car when it stopped was about seventy-nine feet from where appellee afterwards fell. Two other witnesses testified to facts which, if true, plainly indicate that the cars were on the curve when they stopped. Appellee fell west of the west side of the Friederich's building, and the west line on that building was forty-eight feet west of the west line of Greenwood avenue. There was also proof tending to show that the car could not have been started suddenly on account of its loaded condition, the curve in the track, and the number of cars using power on that line at that time.

If appellee gave a signal that she wished to leave the car, and after it stopped was in the act of alighting when the conductor gave the signal to start and the car started, and she was thereby thrown to the ground and injured, the jury might well find that it was negligence in the conductor to give the signal to start so crowded a car without first ascertaining whether any one was in the act of alighting, even though he thought the car had stood still a reasonable

time for any one to alight.   On the other hand, if
the car had already started and proceeded either sev-
enty-nine or forty-eight feet before appellee moved
down upon the step and went off the car, and the con-
ductor did not know that she was doing this, it is
difficult to see how any negligence could be attributed
to appellant or to its servants in charge of the car,
but the injury would seem to be due to carelessness
or lack of good judgment on the part of the appellee.
There is a clear numerical preponderance of witnesses,
both for appellee and for appellant, who testify that
the car stopped when they were both on the curve, and
when the rear of the front car was either at the cross-
walk on the west side of Greenwood avenue or else
directly opposite the cemetery gate, and therefore
either forty-eight or seventy-nine feet from where ap-
pellee fell.   It was reasonable that the motorman
should stop the car at one or the other of these places.
Appellee pushed a button which rang a bell some
two hundred feet before the cemetery was reached.
Another passenger followed with another like signal.
The conductor of the trailer, who had no bell, blew
a whistle to indicate to the motorman that passengers
on the trailer wished to alight.   The motorman knew
and could not fail to know that these passengers
wished to go to the cemetery.   He would be likely to
stop so that the rear of the front car which was a
closed car, would be either directly opposite the cem-
etery gate or else at the cross-walk on the west side
of Greenwood avenue.   No reason appears in the proof
why he should take his train entirely by the cemetery
and stop with the rear of the front car opposite the
west line of the marble shop.   Appellee's counsel sug-
gest that the motorman would not be likely to stop
on the curve with so heavy a load.   But there was no
proof to support that suggestion, and appellee by
her objections kept out proof offered by appellant
to show where the cars were usually stopped to let
off passengers for the cemetery.   If the greater num-

428    Appellate Courts of Illinois.

Hamilton v. Kankakee Elec. Ry. Co., 158 Ill. App. 422.

ber of the witnesses have testified to the truth the case stated in the declaration is not made out. There is another respect in which we are dissatisfied with the verdict. Appellee had no bones broken. Her flesh was not cut. She suffered some from shock that day, but her physician testified that she had recovered fairly well from the shock by the next morning. He then found that the skin upon her left knee was bruised and that the outer part of her left thigh was black and blue. It is very difficult to see how damages to the extent of $3,000 could arise from so slight a cause. Some considerable time later she was found to have sciatica or an inflammation of the sciatic nerve, and she has subsequently suffered seriously from an affliction of that kind. Her physician testified that sciatica could be produced by a blow upon the exterior portion of the thigh. The external injuries were so slight that we feel that the extent of the damage thereby inflicted upon appellee, as well as the question whether appellant is responsible at all for the injury, ought to be submitted to another jury.

Appellant complains that appellee's first, third and fourth instructions were erroneous. The first told the jury that "while the burden of proof in this case is upon the plaintiff herein, still if the jury find that the evidence bearing upon plaintiff's case preponderates in her favor, although slightly, it will be sufficient for the jury to find the issues in her favor." This instruction, in effect, has been approved in Taylor v. Felsing, 164 Ill. 331; Chicago City Ry. Co. v. Bundy, 210 Ill. 39; and Hanchett v. Haas, 219 Ill. 546.

Appellee's third instruction told the jury that it was the duty of appellant when it stopped its cars, whether in consequence of a signal from some passenger on the car or not, not to start the same again while its passengers or any of them were in the act of getting off the car, if the fact that the passengers were in the act of alighting were known to the person having

SECOND DISTRICT—NOVEMBER, 1910.     429

Hamilton v. Kankakee Elec. Ry. Co., 158 Ill. App. 422.

charge of said car, or would be known to such person by the exercise of due care and caution in the discharge of his duties; and as a common carrier of passengers, appellant should give its passengers a reasonable opportunity to alight from its cars when standing still before starting the same, if the fact that its passengers, or any of them, desire to alight is known, or by the exercise of ordinary care and diligence would be known, to the person in charge of the car. The fourth instruction re-stated the principle announced in the third, and added that if the jury believed from the evidence that appellee was in the exercise of due care for her own safety while in the act of alighting from the car, and that appellant by its employe, negligently started the car while appellee was getting off before she had reasonable time to do so, and she was thereby injured, by reason of the negligence of appellant's servants in charge of the car as charged in the declaration or some count thereof, then the defendant would be liable if appellee sustained damages. We are of the opinion that the evidence warranted the court in giving these instructions.

Appellant asked and the court refused the following instruction:

"The court instructs the jury that if they find from the evidence that the car upon which the plaintiff had been a passenger stopped at its usual place of stopping for a reasonable length of time to allow the plaintiff to alight, and if the jury find from the evidence that the same was a safe place for the plaintiff to have left the car, and if the jury further find from the evidence that she did not alight while the car was standing, but did alight immediately after the car had started and while it was in motion, and without the consent of the defendant, and if the jury further find from the evidence that said act of the plaintiff was the proximate cause of her injury, then the defendant is not liable for any damage she has sustained by reason thereof."

This instruction was bad because it ignored the question whether the conductor knew, or in the exercise of reasonable care ought to have known, that appellee was in the act of alighting from the car.

For the reasons above stated the judgment is reversed and the cause remanded.

*Reversed and remanded.*